**Roy W. LUNA, Plaintiff–Appellant,**

v.

**Donna E. SHALALA,[1] Secretary of the Department of Health and Human Services, Defendant–Appellee.**

**No. 93–1845.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1994.

Decided Feb. 22, 1994 [2].

Filed April 20, 1994.

1. Donna E. Shalala is substituted for her predecessor, Louis W. Sullivan, as Secretary of the Department of Health and Human Services. Fed.R.App.P. 43(c)(1).

2. This appeal was originally decided by an unpublished order on February 22, 1994. *See* Circuit Rule 53. The Court has subsequently decided to issue the decision as an opinion.

Bradley W. Swearingen (argued), Moehle, Swearingen & Associates, Washington, IL, for plaintiff-appellant.

George Jackiw (argued), Dept. of Health and Human Services, Region V, Office of Gen. Counsel, Chicago, IL, K. Tate Chambers, Asst. U.S. Atty., Office of the U.S. Atty., Peoria, IL, for defendant-appellee.

Before CUMMINGS, BAUER and ESCHBACH, Circuit Judges.

BAUER, Circuit Judge.

Roy W. Luna appeals from the district court's order affirming the denial of his application for disability insurance benefits by the Secretary of the Department of Health and Human Services ("Secretary"). Luna challenges the finding of the Administrative Law Judge ("ALJ") that he was not disabled. He argues that the ALJ erred in finding that he has the residual functional capacity to perform a full range of sedentary work and in discounting his subjective complaints of pain. He also claims that the ALJ failed to solicit the opinion of a vocational expert and to seek additional medical records.

## ANALYSIS

█ Because the Appeals Council denied review of Luna's application, the ALJ's decision became the final decision of the Secretary, 20 C.F.R. § 404.981; *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir.1993), and this court will only consider evidence that was before the ALJ. *Id.; Eads v. Secretary of the Dept. of Health and Human Services,* 983 F.2d 815, 817 (7th Cir.1993); *Micus v. Bowen,* 979 F.2d 602, 606 n. 1 (7th Cir.1992). That is, Luna's company medical records submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error. *Wolfe,* 997 F.2d at 322 n. 3; *Eads,* 983 F.2d at 817; *Micus,* 979 F.2d at 602 n. 1.

### I. Residual Functional Capacity to Perform Sedentary Work

█ Luna contends that the Secretary did not meet her burden of proving that he has the residual functional capacity to perform a full range of sedentary work in the national economy given his age, education, and past work experience. *See* 20 C.F.R. §§ 404.1520, 416.920; *Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993). We will affirm the Secretary's finding if it is supported by substantial evidence, *Pope,* 998 F.2d at 480, defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Binion v. Shalala,* 13 F.3d 243, 247 (7th Cir.1994). We will not reevaluate the facts, reweigh the evidence, or substitute our own judgment for that of the Secretary. *Edwards v. Sullivan,* 985 F.2d 334, 336 (7th Cir.1993).

The regulations define sedentary work as requiring primarily sitting, some walking and standing, and minimal lifting. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).[3] This court has noted that "a claimant can do sedentary work if he can (1) sit up, (2) do occasional lifting of objects up to ten pounds, and (3) occasionally walk or stand." *Edwards,* 985 F.2d at 338; *see also Kapusta v. Sullivan,* 900 F.2d 94, 96 (7th Cir.1989).

---

**3.** 20 C.F.R. § 404.1567(a) provides:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*See also* 20 C.F.R. § 416.967(a).

## A. Objective Medical Evidence

The objective medical record supports the ALJ's finding that Luna can do sedentary work.[4] Although Luna's medical record shows a significant history of back problems with degenerative disc disease, his treating physician, Dr. Weinger, consistently found him improved after operation or treatment. Despite his chemonucleolysis treatment and a subsequent laminectomy in 1984, Luna was allowed, even before he fully recovered in 1986, to perform light duties that had a twenty-pound weight restriction and did not involve repetitive lifting or bending. When Luna was again hospitalized in January of 1987 due to acute sciatica, his condition had so improved two months later that Dr. Weinger approved his return to work with a forty-pound weight restriction.

The medical evidence that the ALJ found most pertinent was Dr. Weinger's last exam of Luna in August, 1990. Radiological findings earlier that year had disclosed degenerative disc disease and herniated nucleus pulposus that was undetected before. The doctor noted in August that Luna was "entirely within normal limits." He released Luna to light duty work with a forty-pound weight restriction and some vibration restrictions. These limited restrictions imposed by Dr. Weinger support the ALJ's conclusion that Luna was capable of performing sedentary work. Because this court does not re-evaluate the facts nor reweigh the evidence, *Edwards*, 985 F.2d at 336, the ALJ's reliance on Dr. Weinger's August diagnosis will not be disturbed.

■ In support of Luna's disability claim is Dr. Aranas' report of October, 1990. Dr. Aranas, an internist who had last examined Luna in April, 1990, completed a two-page form supplied by the Bureau of Disability Determination Services in which the doctor stated that he had diagnosed radiculopathy. He also noted that Luna had sensory loss at the S–1 distribution and back pain. When asked to describe Luna's ability to do work-related activities, Dr. Aranas stated: "none now." The ALJ found that the report was "cursory in the extreme," and that Dr. Aranas' opinion was inconsistent with Dr. Weinger's more current findings. Because Dr. Aranas was relying on his exam of Luna five months earlier and four months before Dr. Weinger's last exam and because Dr. Weinger had been treating Luna's back problem since 1984, the ALJ did not err in discounting Dr. Aranas' opinion.

## B. Claimant's Own Testimony

Luna's statements of his own activities further support the ALJ's finding that he was capable of performing a full range of sedentary work. In his September, 1990 application for disability benefits, Luna stated that he could drive, prepare coffee, barbecue in a seated position, perform odd jobs, and go fishing so long as he does not sit for more than one hour. During the hearing, Luna testified that he tried to walk one mile a day, and after which he would have to sit or stand for a while or lie down. He could stand for one and a half hours and sit for one hour before experiencing pain. He could lift ten pounds, a gallon of milk, or a light grocery bag. He had no difficulty with fine manipulations such as picking up a rubber band.

■ Luna claims that he is unable to bend or stoop and that his wife's assistance is required in getting his pants and socks on. While the ability to bend is not required for sedentary work, Social Security Ruling 83–14 ("SSR 83–14"); *see also Pope*, 998 F.2d at 487, "a person would need to stoop occasionally (from very little up to one-third of the time, depending on the particular job)" to perform substantially all of the exertional requirements of most sedentary jobs. SSR 83–14. In this case, however, the ALJ found Luna's testimony concerning his inability to stoop not credible, citing Dr. Weinger's entirely normal examination of August, 1990 and Luna's ability to engage in various activities. Because the ALJ's credibility determination will not be disturbed unless it is patently wrong, *Pope*, 998 F.2d at 478; *Herr v. Sullivan*, 912 F.2d 178, 181–82 (7th Cir.1990),

---

4. In fact, the RFC assessment of Dr. Wenthe, a consulting physician, concluded that Luna could perform significant work activities such as lifting 25 pounds frequently and stand or walk for six hours a day. This assessment was not discussed by the ALJ.

the ALJ did not err in discrediting Luna's claim.

## C. Subjective Complaints of Pain

■ Luna argues that given the history of his periodic episodes of debilitating pain since 1984, the ALJ erred in discounting his complaints of pain. In evaluating a claimant's subjective complaints of pain, the ALJ must first determine whether the pain alleged is substantiated by objective medical evidence. 20 C.F.R. § 404.1529. If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. Social Security Ruling 88–13 ("SSR 88–13"). She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. SSR 88–13. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. *Id.; Pope*, 998 F.2d at 485–86. *See also Jones v. Shalala*, 10 F.3d 522, 525 (7th Cir.1993).

■ The ALJ considered Luna's pain in light of the above criteria. She solicited the details of Luna's activities, the extent to which Luna could perform those activities without experiencing pain, and Luna's functional restrictions. She also asked about the effectiveness of pain medication in alleviating Luna's pain, and the extent of Luna's reliance on such medication. In light of Luna's capability to perform various activities, Dr. Weinger's entirely normal examination of Luna in August, 1990, and Luna's failure to seek further medical assistance despite his claim of incapacitating pain, the ALJ found Luna's complaints of pain exaggerated. *See Herr*, 912 F.2d at 181 (claimant's daily activities conflicted with her subjective complaints about fatigue and other symptoms).

The ALJ also found Luna's complaints of pain inconsistent with his minimal reliance on pain medication—Luna only took three pain pills in the two weeks prior to the hearing despite his testimony that they helped alleviate his pain. While Luna's testimony that he disliked taking any medication may have explained why such a small number of pain pills was taken, it has no effect on the inquiry of whether Luna's alleged pain rendered him unable to work. *See DeFrancesco v. Bowen*, 867 F.2d 1040, 1043 (7th Cir.1989) ("if the claimant has inexcusably refused to follow prescribed medical treatment that would eliminate his total disability, then he isn't totally disabled."). *See also* 20 C.F.R. § 416.930(b).

In light of the previously discussed evidence, we find that the ALJ could conclude that Luna's pain was not severe enough to prevent him from performing sedentary work. *See Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir.1991) (claimant's complaints of pain not credible because they were inconsistent with the record as a whole). Accordingly, we find that there is substantial evidence to support the ALJ's finding that Luna had the residual functional capacity to perform a full range of sedentary work.

## II. Vocational Expert

■ Luna argues that the ALJ should have solicited the opinion of a vocational expert because of his non-exertional impairments, pain and hand restrictions. *See* SSR 83–14 (stating that most sedentary jobs require good use of the hands and fingers). Although the regulations suggest that the ALJ's duty to use a vocational expert is discretionary, 20 C.F.R. § 404.1566(e); *Binion*, 13 F.3d at 246, this court has said that in cases where a non-exertional limitation might substantially reduce a range of work an individual can perform, the ALJ must consult a vocational expert. *See Warmoth v. Bowen*, 798 F.2d 1109, 1110 (7th Cir.1986). *See also Walker v. Bowen*, 834 F.2d 635, 642 (7th Cir.1987) (use of the grid is inappropriate if "the claimant suffers from severe non-exertional impairments, including pain, which prevent the claimant from performing the work indicated by the grid.").

In this case, there was substantial evidence supporting the finding that Luna's claimed non-exertional limitations had no significant impact on his ability to perform the full range of sedentary work. As mentioned before, the ALJ properly discounted Luna's subjective complaints of pain based upon the medical evidence and Luna's own testimony, and such credibility determination is entitled to considerable weight. *See Kapusta,* 900 F.2d at 97 ("the disabling extent of the claimant's pain is a question of fact for the ALJ"); *Kelley v. Sullivan,* 890 F.2d 961, 965 (7th Cir.1989). *See also Nelson v. Secretary of Health & Human Services,* 770 F.2d 682, 685 (7th Cir.1985) (use of grid permissible if the claimant "could perform a variety of work related functions despite the fact that she might experience some discomfort in the process"). There was also substantial evidence that any limitation of motion in Luna's hands was not disabling or significant. Although he could not perform such manipulations as changing a spark plug, Luna himself testified that he had the ability to perform fine manipulations such as picking up a rubber band. Thus, the ALJ could conclude that Luna's capability to perform the full range of sedentary work was not significantly impacted by his hand restrictions.

### III. *The ALJ's Duty to Fully and Fairly Develop the Record*

■ Luna argues that the ALJ failed to adequately develop the record. Luna's contention stems from the ALJ's comment during the hearing that she may request additional medical records. Because the last medical record reviewed by the ALJ was dated eight months before the hearing, Luna argues that more current medical opinions would have supported his claims of pain and movement restrictions and resolved the conflict between Dr. Weinger's and Dr. Aranas'

opinions. The other medical evidence was the existing medical record apparently compiled by Luna's company's physicians from October 18, 1973 to September 10, 1991.[5]

■ This court has commented on the difficulty of having a "complete" record as "one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on." *Kendrick v. Shalala,* 998 F.2d 455, 456–57 (7th Cir.1993). While the ALJ has a heightened duty to make sure that the record is developed when a claimant is unrepresented, *Thompson v. Sullivan,* 933 F.2d 581, 587 (7th Cir.1991); *see also Smith v. Secretary of HEW,* 587 F.2d 857, 860 (7th Cir.1978), how much evidence to gather is a subject on which we generally respect the Secretary's reasoned judgment. *See Kendrick,* 998 F.2d at 458.

■ Moreover, a significant omission is usually required before this court will find that the Secretary failed to assist *pro se* claimants in developing the record fully and fairly. *See, e.g., Thompson,* 933 F.2d at 586–88 (case remanded where ALJ overlooked claimant's physical and psychological problems, failed to inquire into the present status and possible effects of alcoholism despite a diagnosis of chronic alcoholism, failed to order additional x-rays to ascertain the extent of the degeneration of claimant's spine when the last x-rays were taken nine years ago, and focused on medical records from three years ago to the virtual exclusion of everything else—including testimony; stating that "at the very least, more thorough questioning" of claimant would have been appropriate); *see also Smith,* 587 F.2d at 861–62.

The Secretary's regulations give some guidance. 20 C.F.R. § 404.1512(d) provides that before determining that a claimant is

---

**5.** While Luna stakes his all on persuading this court to reverse the denial of disability benefits on the ground that the ALJ had an affirmative duty to procure the evidence, there were several avenues Luna could have pursued in attempting to have this court consider this evidence. He could have argued that the Appeals Council's refusal to review the ALJ's decision was based on a mistake of law. *Eads,* 983 F.2d at 817. In addition, 42 U.S.C. § 405(g) authorizes the court

to remand the case to the Social Security Administration for consideration of newly discovered evidence. Thus, Luna could have submitted the additional evidence to the district court as a basis for requesting such a remand. *Id.* Alternatively, Luna could have petitioned the Social Security Administration to reopen his case in light of newly discovered evidence. 20 C.F.R. §§ 404.987–404.989, 416.1487–416.1489; *Eads,* 983 F.2d at 817.

not disabled, the Secretary has the responsibility to develop the claimant's "complete medical history," defined as records of the claimant's medical sources covering at least the 12 months preceding the month in which the claimant's application is filed. The Secretary will try to obtain additional evidence if the evidence before her is insufficient to determine whether a claimant is disabled or, if after weighing the conflicting evidence, she cannot reach a conclusion. 20 C.F.R. § 404.-1527(c)(3). In that situation, the Secretary will either request additional existing records, recontact claimant's treating sources or any other examining sources, or ask the claimant for more information or to undergo a consultative examination. *Id.*; 20 C.F.R. § 404.1512(e).

In this case, the ALJ probed into all of the relevant areas. She extensively queried Luna as to his pain, medication, and activities and reviewed Luna's medical records from 1984 to August of 1990, one month before Luna's application was filed. While there was some conflict in the medical evidence, the conflict was properly resolved by the ALJ. Although the Secretary's policy statement concerning the evaluation of pain seems to place a heavy burden on the ALJ to thoroughly investigate all evidence relating to pain, SSR 88–13, it does not go so far as to require the ALJ to update objective medical evidence to the time of hearing as Luna suggests.[6] Finally, although the Secretary has the burden of proving Luna's capability to perform sedentary work, it was Luna's duty, under 20 C.F.R. § 404.1512(a), to bring to the ALJ's attention everything that shows that he is disabled. This means that Luna must furnish medical and other evidence that the ALJ can use to reach conclusions about his medical impairment and its effect on his ability to work on a sustained basis. 20 C.F.R. § 404.1512(a). Thus, even though it is unclear why Luna's company physicians' records were not before the ALJ, the ALJ's failure to obtain the evidence is not a reversible error.

**CONCLUSION**

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

**6.** Social Security Regulation 88–13 provides that "whenever available," certain types of objective medical evidence must be obtained and must be considered in determining the intensity and persistence of pain and the effect such pain may have on the individual's work capacity.