151 F.3d 1033
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Terrence R. MERCIER Plaintiff-Appellant,
v.
Kenneth S. APFEL, Commissioner of Social Security, Defendant-Appellee.
 No. 97-3903.
 United States Court of Appeals, Seventh Circuit.
 Argued May 18, 1998.
Decided June 16, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Aug. 18, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 95 C 505. J.P. Stadtmueller, Chief Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. ILANA DIAMOND ROVNER, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Terrence Mercier sought judicial review of a decision of the Commissioner of Social Security ("Commissioner") that plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (42 U.S.C. §§ 416(I)423(d) 1382 and 1382c(a)). The district court denied the appeal and dismissed the action. We affirm.
 
 
 2
 Plaintiff filed an application for DIB in November 1992 alleging that he had been unable to perform substantial gainful activities since July 31, 1978, because of a back injury. Since plaintiff's insured status had expired on December 31, 1983, the Wisconsin state agency denied his DIB application. On April 14, 1993, he filed an application for SSI and that application was also denied by the state agency. However, it subsequently determined that plaintiff met the income and resources guidelines for SSI as of February 1, 1994.
 
 
 3
 After a request for an administrative hearing was filed, Administrative Law Judge Bernoski considered whether plaintiff was entitled to DIB from July 31, 1978 through 1983 and SSI from February 1, 1994 onward. In September 1994 the ALJ denied the applications on the ground that plaintiff was able to perform a range of light/sedentary work with sit/stand option and because vocational evidence established that he could perform a significant number of jobs despite his limitations. The Appeals Council denied the request for review, prompting plaintiff to seek judicial review under 42 U.S.C. § 405(g).
 
 
 4
 In July 1997 Magistrate Judge Gorence entered a report recommending that the district judge affirm the ALJ's decision except for his failure (a) to hold a supplemental hearing and (b) to subpoena consulting physician Dr. William McDevitt to appear and testify. However, in September 1997 Chief Judge Stadtmueller rejected the magistrate judge's recommendation and affirmed the Commissioner's decision holding that plaintiff was entitled to neither DIB or SSI.
 
 Facts
 
 5
 Plaintiff was 47 years old when the ALJ issued his adverse decision. Mercier had a high-school education and had worked as a carpenter. He was divorced and living alone at the time of the administrative hearing.
 
 
 6
 In the spring of 1978 plaintiff injured his back at work and received medical treatment from Dr. C.A. Sattler commencing in May 1978. Because Mercier had a herniated disc, Dr. Sattler performed a laminectomy and disc removal in July 1978. Dr. Sattler thereafter considered plaintiff as doing exceptionally well and having no significant problem. He expected plaintiff to recover three to five months after the surgery.
 
 
 7
 In December 1978 plaintiff again complained of back pain although his physical examination conclusion was that his condition was "reasonably good," and Dr. Sattler added that plaintiff would have little difficulty returning to carpentry since he had only 5% to 10% residual disability. However, in March 1979 Dr. Sattler decided that plaintiff should not perform repeated bending or lift more than 25 pounds so that he should not return to carpentry.
 
 
 8
 A month later, Dr. Sattler reported that plaintiff was complaining more than he should and added that he should be performing some type of work. In August 1979 Dr. Sattler said that plaintiff had experienced a 10% to 20% permanent partial disability. In October 1979 Dr. Sattler determined that by then plaintiff had healed with a 10% to 20% permanent partial disability and should be seeking alternative employment, but replacing his former profession of carpentry.
 
 
 9
 Plaintiff's insurance payments were cut off in November 1979 and his pain complaints increased thereafter. However, Dr. Sattler again concluded that plaintiff could perform less demanding work than carpentry. In April 1980 plaintiff consulted Dr. Andrew McBeath, who concluded that plaintiff had normal muscle strength and normal reflexes.
 
 
 10
 Thereafter plaintiff informed Dr. Sattler that he was unhappy with what the two doctors had advised. Nevertheless Dr. Sattler encouraged him to exercise and get out and do some work. He added that plaintiff was "a little bit happy that he is not completely well." Before retiring in 1984, Dr. Sattler indicated that plaintiff had continued to perform some carpentry work in his garage.
 
 
 11
 Plaintiff next consulted Dr. G. Tsuchiya, who noted that a vocational/rehabilitation service in Milwaukee had found a job for plaintiff, who refused to take it because of low pay. Dr. Tsuchiya noted that plaintiff continued to work out of his house doing small jobs and that his sole abnormality consisted of limited straight leg raising to 45 degrees. Dr. Tsuchiya subsequently concluded that plaintiff could lift between 30 and 50 pounds and could go back to work whenever he wanted.
 
 
 12
 In May 1990 Dr. Tsuchiya performed another laminectomy to correct some disc herniation. Subsequently plaintiff reported immediate pain relief and good results. Dr. William McDevitt, another orthopedic surgeon, concluded that as of January 30, 1991, plaintiff could lift up to 50 pounds.
 
 
 13
 Dr. Tsuchiya later concluded there was no evidence of nerve root involvement but that plaintiff should receive epidural injections, which provided significant relief to plaintiff.
 
 
 14
 After plaintiff's medical insurance terminated in August 1992, he sought no medical treatment until April 1993 when he underwent x-rays that were not dispositive of his work ability.
 
 
 15
 In March 1994 plaintiff's lawyer contacted Dr. Sattler, who reported that plaintiff could sit for one hour at a time for six hours during an eight-hour work day and stand and walk for the same length of time and lift ten pounds for two hours and 40 minutes during an eight-hour work day.
 
 
 16
 In June 1994 Dr. Tsuchiya reported that plaintiff was unable to perform his past work as a carpenter.
 
 
 17
 In March 1994 plaintiff appeared before the administrative law judge ("ALJ") in support of his SSI and DIB applications. In his September 1994 decision, the ALJ found that there was a significant number of jobs available that would accommodate plaintiff's medical limitations and vocational characteristics. Consequently he concluded that plaintiff was not disabled at any time.
 
 
 18
 Failure to subpoena Dr. McDevitt to testify
 
 
 19
 Plaintiff contends that the ALJ should have issued a subpoena to compel Dr. McDevitt to testify. As the district court determined, the failure to do so did not constitute reversible error because, as was his prerogative, the ALJ did not accept Dr. McDevitt's finding that plaintiff could perform all work activities except for lifting 50 pounds. The ALJ had not relied on Dr. McDevitt's report to find that plaintiff was not disabled but instead adopted Dr. Sattler's conclusion that he could perform a range of light-sedentary tasks.
 
 
 20
 It should be noted that the regulations authorize an ALJ to issue a subpoena only "when it is reasonably necessary for the full presentation (./Uof a case" (20 C.F.R. §§ 404.950(d)(1); 416.1450(d)(1)), and no such necessity was shown.
 
 
 21
 The ALJ reasonably found that plaintiff could perform a significant number of jobs
 
 
 22
 The plaintiff criticizes the ALJ for considering the medical evidence in finding that it failed to corroborate plaintiff's disabling pain complaints. However, ALJs are required to evaluate medical evidence to assess a claimant's residual functional capacity for work. Diaz v. Chater, 55 F.3d 300, 306 n. 2 (7th Cir.1995); Luna v. Shalala, 22 F.3d 687 (7th Cir.1994); Binion v. Shalala, 13 F.3d 243, 247 (7th Cir.1994). Therefore the ALJ did not act improperly. His conclusion is supported by the evidence summarized above.
 
 
 23
 Judgment affirmed.