**James R. DREA, Sr., Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 02–2432.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 17, 2002.

Decided Feb. 14, 2003.

Before BAUER, CUDAHY, and COFFEY, Circuit Judges.

ORDER

James Drea applied for Social Security Disability Insurance Benefits in August 1998, claiming that disabling fatigue had prevented him from working since November 1993. An administrative law judge denied benefits, concluding that Drea was not disabled because his daily "activities [were] consistent with an individual capable of performing medium work activities."

After the Social Security Administration's Appeals Council denied review, Drea sought review in the district court, which affirmed, finding that substantial evidence supported the ALJ's decision. We agree that the ALJ's decision is supported by substantial evidence, and affirm.

For more than 34 years, Drea, who is now 63 years old, worked for the Chrysler Corporation performing medium level, semi-skilled work. Drea retired in October 1993, more than one year after being diagnosed with colon cancer, because he was "[j]ust too tire[d]." The only mention of fatigue in the record prior to Drea's retirement appears in March 1993 when he complained to his treating physician that he was tired. At his next checkup, however, he informed his doctor that he had "[n]o complaints."

Drea did not stay retired long. During the summers of 1995, 1996, and 1997, he earned extra money employed as a seasonal fork truck driver for a canning company. His duties required him to stand for an hour, walk for an hour, sit for six hours, and lift up to fifty pounds. When he was working at the canning company, he worked forty-hour work weeks for about four months. Drea has not worked since his seasonal position ended in September 1997.

After moving to Cazenovia, Wisconsin, in 1996, Drea began seeing a general practitioner Dr. Thomas Richardson, and in December 1996 told Richardson that he was feeling fatigued. Subsequent tests revealed that Drea's liver function levels were slightly elevated. Drea's next visit to Dr. Richardson occurred in November 1998 (in connection with Drea's application for disability benefits), and blood work again revealed elevated liver function and glucose levels. Although noting that Drea was "basically healthy" despite possible fa-

tigue, Dr. Richardson expressed concern that Drea may have hemochromatosis (a disorder where the body absorbs too much iron) and a carbohydrate intolerance. Dr. Richardson referred Drea to Dr. Russell Jacoby, a gastroenterologist, for further testing.

A Rest Questionnaire submitted by the patient from Dr. Richardson's office in November 1998 (again in connection with Drea's application) suggested that Drea's fatigue significantly limited his ability to move and lift. According to Dr. Richardson, Drea could not climb, crouch, stoop, or crawl, but he could occasionally kneel and balance. Further, Dr. Richardson stated that Drea could lift twenty pounds only occasionally and five pounds frequently and could walk or stand only for one hour and sit for a total of two hours in one-hour intervals. Richardson concluded that the Drea "requires complete freedom to rest frequently without restriction" and that his fatigue problem limited his reaching, handling, and pushing/pulling ability. Dr. Richardson stated that he based his evaluation solely on "medical findings" of "fatigueability [sic]."

After examining Drea in December 1998 upon referral from Dr. Richardson, Dr. Jacoby stated that Drea complained of fatigue for the past six to seven months. He further noted that hemochromatosis is "less likely" as a diagnosis. Tests that Jacoby performed in January 1999 showed fatty infiltration of Drea's liver and a possible diagnosis of Hepatitis C.

Dr. Pat Chan, a state physician reviewing Drea's application for disability, contacted Dr. Richardson about the Rest Questionnaire. In notes from this conversation, Chan stated that doctors had ruled out hemochromatosis in February 1999 (although Drea argues that this is incorrect) and that Dr. Richardson informed her that he completed the Rest Questionnaire based on Drea's subjective complaints. Dr. Chan then submitted a written question to Dr. Richardson regarding Drea's fatigue, and he responded that the Hepatitis test was a false positive and that Drea instead may suffer from autoimmune hepatitis (a disorder where the body's own immune system attacks the liver; Hepatitis C, by contrast, is caused by a virus that attacks the liver). Dr. Chan opined in a February 1999 report that Drea could occasionally lift fifty pounds, frequently lift twenty-five pounds, and sit, stand, or walk for six out of eight hours a day. Dr. Chan noted her disagreement with Dr. Richardson's evaluation, which she says was "based solely on claimant's report of fatigue and is not supported by any objective findings."

In his 1998 disability application and at his 1999 hearing, Drea explained how his fatigue limited his ability to function. Until about 1997 or 1998 (the record is not specific), Drea helped feed the cattle on his brother's farm, which took about an hour a day, but after that his fatigue forced him to take a nap. Since he stopped working on the farm, Drea arises between 7:30 a.m. and 8:00 a.m., but has to take a morning nap because he would become exhausted after his morning activities of playing cribbage with his wife, buying a newspaper across the street from his home, and reading the newspaper. According to the record, Drea also ran errands for his wife, did light housework, tended his garden, and bowled, but his fatigue would force him to rest after about an hour of performing these activities. Despite his fatigue, Drea could drive locally and occasionally visited with friends for a couple hours. Finally, he testified that because of fatigue, he could sit for only three hours, stand for an hour, and occasionally lift twenty-five pounds.

The ALJ concluded that Drea did not qualify as being disabled under 42 U.S.C. §§ 416(i)(1), 423. First, the ALJ found that Drea had not performed substantial gainful activity since November 1, 1993, despite Drea's seasonal employment in 1995, 1996, and 1997. Second, the ALJ determined that Drea had a severe, medically determinable impairment because he suffered from "severe elevated liver function and [has] a history of colon cancer." Third, the ALJ noted that these impairments did not equal an impairment listed in 20 C.F.R. Subpart P, Appendix 1. Fourth, the ALJ found that Drea could perform his past relevant work at Chrysler. In reaching this conclusion, the ALJ gave controlling weight to Dr. Chan's February 1999 report; the ALJ reasoned that the Rest Questionnaire submitted by Dr. Richardson was based on Drea's subjective complaints and was not "consistent with the record and with the objective medical evidence." Further, the ALJ gave little weight to Drea's subjective complaints of fatigue because the medical evidence did not support the extent of his subjective symptoms and his daily activities were consistent with someone capable of performing medium work.

We will uphold an ALJ's decision denying disability benefits if the ALJ applied the proper legal standard and substantial evidence supported the decision. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir.2002); *see also* 42 U.S.C. § 405(g). Substantial evidence "requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir.2000) (internal quotation omitted). When we review an ALJ's decision, we accept the ALJ's findings of facts and will not reweigh the evidence. *Id.* The issue on appeal is whether substantial evidence supports the ALJ's finding at step four that Drea could perform his past relevant

work. *See* 20 C.F.R. § 416.920 (detailing five-step analysis).

Drea first argues that the ALJ erred by not crediting Dr. Richardson's opinion that Drea could not perform his past relevant work. An ALJ must give controlling weight to a treating physician's opinion on the claimant's medical condition unless the opinion is not well-supported by medical findings or is inconsistent with other record evidence. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir.2000); *see also* 20 C.F.R. § 404.1527(d)(2). We have held, however, that an ALJ may give less weight to a doctor's report that is based solely on the claimant's "own statements about his functional restrictions at the time of the examination." *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995); *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir.2001) ("An ALJ may properly reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations.").

■ Here, substantial evidence supported the ALJ's decision to discredit Dr. Richardson's opinion in the Rest Questionnaire. Initially, Dr. Richardson informed Dr. Chan that he completed the questionnaire based solely on Drea's symptoms as reported by Drea, and thus, the ALJ could infer that the questionnaire might not accurately reflect Drea's limitations. Secondly, Dr. Richardson cited no objective medical findings to substantiate his proposed limitations; for example, on the questionnaire, he listed "fatigueability [sic]" as a "medical finding." He provided no objective findings even though the questionnaire specifically asked the treating doctor to "[i]dentify the particular medical findings [i.e., physical exam findings, x-ray findings, lab test results, history, symptoms (including pain), etc.] which support [his] assessment of any limita-

tions." In light of Dr. Richardson's reliance on Drea's subjective complaints rather than medical evidence, the ALJ did not err when he discredited Dr. Richardson's opinion and gave controlling weight to Dr. Chan's opinion.

Drea next argues that the ALJ improperly discredited his subjective accounts of fatigue, failed to discuss his fatigue as a symptom of an objective medical condition, and "enhanced and enlarged the extent to which the ... activities were performed by the claimant." An ALJ may consider a claimant's testimony less credible if the medical evidence does not support the symptoms to the extent alleged, *see Powers*, 207 F.3d at 435–36 ("The discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition."), and if doctors did not find it necessary to prescribe medication to control symptoms, *see id.* at 435 (holding that it is not patently wrong for the ALJ to consider "the absence of drugs prescribed for severe pain"). Further, when assessing the claimant's credibility, the ALJ may rely on inconsistencies between the claimant's daily activities, subjective complaints, and the medical evidence. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). In doing so, however, the ALJ must explain why the evidence is inconsistent. *Id.* Because an ALJ is best positioned to judge credibility, we reverse an ALJ's credibility determination only if it was "patently wrong." *Powers*, 207 F.3d at 435.

■ The ALJ's decision to discredit Drea's subjective complaints of fatigue is supported by substantial evidence. The medical evidence does in some way support Drea's position–the ALJ acknowledged elevated liver functions may lead to fatigue–but Drea failed to introduce evidence into the record showing that his fatigue is sufficiently debilitating or that it prevents him from demonstrating that he is unable to perform at a medium work level. Drea's medical records reflect that he complained to doctors about his fatigue on only three occasions–March–April 1993, December 1996, and October/November 1998–and in the intervening time, he worked seasonally and on his brother's farm. The record also demonstrates that Drea's fatigue appeared to be intermittent–in 1993 Drea reported to doctors that he was doing well after previously complaining of fatigue. Further, the ALJ properly considered, and found significant, under *Powers* that Dr. Richardson did not prescribe medication for Drea's fatigue, which indicated that Drea's fatigue was not as severe as he claimed. Finally, Drea's complaints of fatigue are undermined by his failure to seek medical attention for extended periods of time. *See Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir.1994) (ALJ may find claimant's complaints exaggerated when claimant fails "to seek further medical assistance").

■ In addition, the ALJ's determination that Drea could perform medium work was not "patently wrong." First, although Drea claims that fatigue has prevented him from working at a medium level since November 1, 1993, the ALJ noted that Drea had performed medium level work at the canning factory in 1995, 1996, and 1997, and helped around his brother's farm until approximately 1997 or 1998. Drea responds that he stopped his seasonal work "because of extreme fatigue," but the ALJ noted that Drea stopped working because the canning season ended, not because of his fatigue, proving that Drea could perform medium work despite his claims of disabling fatigue. Second, Drea worked full eight-hour shifts at the canning company without rest breaks, contrary to the conclusions that Dr. Richard-

son made on the Rest Questionnaire that Drea be given complete freedom to rest. Thirdly, Drea's activities between 1993 and 1999 of gardening, yard work, and bowling involved crouching, stooping, kneeling, and balancing, actions inconsistent with Dr. Richardson's responses in the Rest Questionnaire that Drea never or only occasionally perform these functions. This evidence supports the ALJ's finding that Drea's fatigue, considered in light of the record, does "not reflect an individual so impaired as to be incapable of engaging in any substantial gainful activity," which the ALJ found to be medium work.

Finally, Drea argues that the ALJ should have consulted a vocational expert to "assess how Mr. Drea's non-exertional impairment would affect the occupational base." An ALJ, however, need not consult a vocational expert if substantial evidence supports the finding that the alleged non-exertional limitation does not significantly impact the claimant's ability to perform a full range of work. *Zurawski*, 245 F.3d at 889; *Luna*, 22 F.3d at 692. As discussed above, substantial evidence supports the ALJ's finding that Drea's fatigue was not disabling, and the ALJ could conclude that whatever fatigue Drea in fact suffered would not significantly impact his ability to perform medium work. Thus, the ALJ did not err by not consulting a vocational expert.

AFFIRMED.