**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 26, 2020
Decided June 12, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-2332

| | |
|---|---|
| LORA S. SIMONS,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>ANDREW M. SAUL,<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Southern District of Illinois.<br><br>No. 18-cv-00961<br><br>Donald G. Wilkerson,<br>*Magistrate Judge.* |

**O R D E R**

Plaintiff Lora Simons filed for Supplemental Security Income benefits, but an administrative law judge (ALJ) determined she was not disabled under the relevant regulations. Simons appeals this denial of benefits, and we affirm. Substantial evidence supports the ALJ's decision that Simons was not disabled.

Simons suffers from back pain, depression, and anxiety. She has been prescribed medication for these conditions over the course of a long treatment history.

According to medical records, Simons had three lumbar spine surgeries between 2000 and 2002. Simons, for a time, also had a spinal cord stimulator installed after a failed back surgery. In 2008, Simons was diagnosed with post-laminectomy syndrome, also known as "failed back surgery syndrome," referring to persistent pain experienced after a spinal surgery. In 2009 and 2010, Simons saw a pain management specialist who noted that Simons suffered from decreased range of motion and prescribed her Oxycodone. Other doctors in 2010 and 2011 continued to prescribe opioid painkillers.

In 2012, Simons began seeing a primary care physician, Dr. Thomas Black. Dr. Black prescribed Vicodin for pain and Xanax for anxiety. Dr. Black also referred Simons to Dr. Lucy Field for mental health counseling. Dr. Field apparently did not keep notes for Simons but made several referrals to Dr. Black for anti-depression medications and Adderall. Through 2015, Dr. Black continued to prescribe her pain medication and anti-depressants. Dr. Black advised Simons to try to avoid the painkillers when she needed to concentrate on a task.

Simons filed her claim for disability benefits in October 2014, and a series of reviews by state consultants followed. At a consultation in February 2015, Dr. Andrew Koerber examined Simons. The doctor noted Simons was in pain and walked slowly with an abnormal gait. She had trouble performing tandem, heel, and toe walks. She also had decreased range of motion in various joints. Dr. Koerber opined that Simons could sit, stand, or move for about 30 minutes at a time for a total of four hours a day.

That same month, Dr. Paul Schneider, a consulting psychologist, evaluated Simons. Dr. Schneider opined that Simons's primary impairment was decreased concentration due to the high dosage of her prescribed Xanax.

In March 2015, a state agency consultant reviewed Simons's medical records and determined she had the residual functional capacity[1] to perform light work; a second state consultant essentially concurred in May 2015. At the same time, a state psychological consultant reviewed Simons's records and determined that she had "sustained concentration and persistence limitations." The psychological consultant further rated Simons as "moderately limited" in her ability to maintain concentration, to work within a schedule, to maintain regular attendance, and to perform at a consistent pace. The consultant agreed with Dr. Schneider that Simons's concentration issues probably

---

[1] Residual functional capacity, or RFC, refers to the most work an applicant can perform despite any impairments. *See* 20 C.F.R. § 404.1545(a)(1).

stemmed from Xanax use. The report concluded that Simons could manage simple tasks under limited pressure.

From 2015 to 2017, Simons saw a new primary care physician, Dr. Michael Rawlings, for back pain. Dr. Rawlings prescribed Oxycontin and hydrocodone for pain relief. In a September 2016 exam, Dr. Rawlings noted that Simons expressed pain but had normal strength and gait.

In 2017, the ALJ held an evidentiary hearing to assess the evidence regarding Simons's claimed disability. At the hearing, Simons represented herself pro se and testified that she could stand for about fifteen minutes at a time and could sit for fifteen to twenty minutes before pain required her to shift her posture. Simons stated she could lift seven pounds and did "little projects," including some limited grocery shopping and food preparation. Simons further testified she had anxiety being around others and had trouble with concentration and memory. Simons also noted that she was no longer taking Xanax.

A vocational expert (VE) also took the stand to respond to hypothetical questions from the ALJ. Based on the hypotheticals, the VE testified that someone with impairments like Simons could work as a hand packager, small product assembler, or inspector. The VE additionally identified sedentary work that such a person could perform.

After hearing the evidence, the ALJ determined that Simons had the RFC to work at a light exertional level, on simple, routine, and repetitive tasks. Such work could require only simple work-related decisions. Further, the ALJ found that there was a significant number of positions in the national economy that Simons could perform and thus denied her disability claim.[2] Simons appealed the decision under 42 U.S.C. § 405(g) to the United States District Court for the Southern District of Illinois, and a magistrate judge reviewed it. The magistrate judge determined that substantial evidence supported the ALJ's decision and affirmed the denial of benefits. Simons timely appealed to this Court.

---

[2] If there are a significant number of jobs available in the national economy to an applicant despite her limitations, an ALJ will find the applicant not disabled. *See Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017) ("[T]he SSA's disability determination … asks whether a medically determinable impairment prevents the claimant from engaging in past relevant work or any substantial gainful work that exists in the national economy.") (citations omitted).

"We review the district court's judgment *de novo*, meaning that we review the ALJ's decision directly." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This standard is "very deferential" to the ALJ. *Id.* We ask whether "substantial evidence" supports the ALJ's decision. *Id.* (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

Our role is therefore limited: we may not usurp the ALJ's judgment by reevaluating evidence or making our own credibility determinations. In fact, even if reasonable minds could differ concerning whether Simons is "disabled,"[3] we must affirm the ALJ's denial of her disability claim if the record adequately supports it. *Id.*

While the ALJ's opinion was not as fulsome as others we have reviewed, it was adequate. *Cf. Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012) (describing ALJ's opinion as "somewhat cursory" but holding that reference to doctor's examination results "[was] enough."). We thus turn to Simons's contentions to the contrary: she argues that the ALJ erred by (1) failing to adequately address her mental impairments, including her limited ability to concentrate, (2) failing to adequately discuss her treatment for back pain and impairments, and (3) placing undue weight on her ability to perform modest household tasks.

Simons asserts that the ALJ erred by finding she could perform (as the magistrate judge summarized) "simple, routine, repetitive tasks involving only simple work related decisions with few, if any, work place changes requiring quota based production as opposed to production requirements." According to Simons, this finding ignores her deficits in maintaining concentration, persistence, or pace of work. Such limitations are among those a VE must consider when testifying to the ALJ. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

As described above, two state agency consulting physicians opined in early 2015 that Simons had moderate limitations in her:

> ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and ability to complete a

---

[3] An individual is disabled "if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that is either terminal or expected to last at least a year. 42 U.S.C. § 1382c(3)(A).

normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent past without an unreasonable number and length of rest periods.

Simons claims that the ALJ needed to ask the VE what the combined effect of these limitations would have on her ability to perform substantive gainful work. Not doing so, says Simons, omitted a critical aspect of the evidence. But the state consultants and an examining physician believed Simons's concentration issues stemmed from excessive Xanax use. As Simons testified that she was no longer taking the drug, it was reasonable for the ALJ to place reduced weight on Simons's previous, drug-caused concentration impairment in making his disability determination.

The state agency consultants further found that Simons was moderately limited in her ability to complete a workday. As such, Simons contends that the ALJ should have asked the VE two additional questions: "1) What is the employer tolerance for off task behavior for the representative jobs you have identified, and 2) What is employer tolerance for the frequency by which an employee can exceed the employer tolerance for off task behavior?" Simons insists that if the ALJ had asked these questions, the VE likely would have testified that Simons was incapable of maintaining any employment.

The record shows that the ALJ asked appropriate questions and that the VE's responses supported a denial of disability benefits. The ALJ asked the VE to consider a hypothetical worker with no past relevant work, the ability to perform only "light work as defined in the regulations, occasional postural activities, the work should be limited to simple, routine and repetitive tasks involving only simple work-related decisions with few if any workplace changes and requiring quota based production … as opposed to production requirements." After the VE responded that such a person could find work in the national economy, the ALJ continued to refine the parameters to reflect additional limitations in the hypothetical worker's abilities.

Q: For my next hypothetical … I'm also going to add in that they would need the option to sit and stand at will provided they're not off task more than 15 percent of the work day … [and have] no more than occasional contact with supervisors, incidental contact with co-workers and no contact with the public.

The VE responded "same jobs, same numbers" and the ALJ added further detail to the hypothetical: "everything from hypothetical two but we're going to reduce to sedentary work." The VE identified several examples of possible jobs, including bench hand, se-

curity monitor, and clerical sorter. Finally, the ALJ and VE's colloquy established certain conditions which would prevent employment:

> Q: All right, and if an individual were off task for any reason more than 15 percent of a work day would they have the ability to do those jobs or any other jobs?
>
> A: No competitive full time employment.
>
> Q: All right, and if an individual were to miss two or more days a month on a consistent basis would they be able to do those or any other jobs?
>
> A: No competitive full time employment.

The ALJ's first three hypotheticals were consistent with the limitations expressed in the medical record. While Simons may now wish that the ALJ had asked certain other questions, "a significant omission is usually required before this court will find that the Secretary failed to assist *pro se* claimants in developing the record fully and fairly." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). There was no such "significant omission" here. *Id.* The questions reflected the "light work" the reviewing consultants believed Simons could undertake and were consistent with the state psychological consultant's conclusion that she could manage simple tasks with limited pressure and complexity.

In sum, Simons "has not pointed to any specific facts that were not brought out during the hearing nor has she provided any new medical evidence. Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). The record supports the ALJ's opinion.

Simons next contends that the ALJ failed to adequately account for her mental health impairments, ignoring the duration of her mental health treatment and the significant doses of psychopharmaceuticals she took for depression. According to Simons, the ALJ failed to build the necessary logical and evidentiary bridge to reach a "not disabled" finding. But Simons fails to explain how additional references to her mental health treatment would have affected a disability determination; neither the duration of her mental health treatment nor her depression medication establish an inability to work. The ALJ noted Simons's mental health issues but determined that, considered in isolation or in combination, none met or exceeded the statutory criteria for finding disability. Simons has not presented any evidence that would show that finding to be error.

Simons maintains that the ALJ failed to discuss pertinent evidence related to her back pain and impairment; specifically, he made no mention of the medications prescribed for lumbar-related pain or of her diagnoses for post-laminectomy syndrome. As an initial matter, while the ALJ may not have referred to post-laminectomy or failed back surgery syndrome by name, his determination is replete with references to Simons's back pain, surgery, and treatment. The ALJ found Simons's back issues were significant; hence, any failure to list an additional back-related diagnosis was at most harmless error.

It is true that the ALJ did not extensively discuss Simons's various prescriptions for pain medication related to her back. He did, however, note that Simons testified she was being conservatively treated with medication, and further that the medical records reflected stable or improving pain with medication. The ALJ's choice not to list Simons's prescriptions in detail does not constitute reversible error. "The ALJ is not required to address every piece of evidence or testimony presented, but must provide an accurate and logical bridge between the evidence and her conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citation and internal quotation marks omitted).

Regarding her back impairment, Simons contends that the ALJ did not discuss the findings Dr. Koerber made during his February 2015 examination, including "antalgic and slow gait; decreased sensation in the left leg, moderate trouble preforming a tandem walk; the inability to perform a toe walk; mild trouble performing a heel walk; … she could only squat down about three quarters of the way due to pain;" and limited flexion. Simons reasons that an "ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (citation omitted).

The ALJ's decision to discount Dr. Koerber's findings had a sound basis in the record: Dr. Koerber's findings were contradicted by Simons's own primary care physician, Dr. Rawlings, who found normal gait and strength. "[W]hen assessing conflicting medical evidence, an ALJ must decide, based on several considerations, which doctor to believe." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (describing *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)). Not only was Dr. Rawlings's examination more recent than Dr. Koerber's, but Dr. Rawlings was Simons's treating physician. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[M]ore weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances.").

Here, Simons's objection improperly asks us to reweigh the evidence, giving precedence to an older examination over a newer one. The ALJ's decision, however, is supported by the findings of the more recent examination. In such a situation, it was reasonable for the ALJ to discount Dr. Koerber's findings in favor of Dr. Rawlings's.

Finally, in denying Simons's disability claim, the ALJ listed the following activities in which Simons engaged:

> She can stand for 15 minutes and sit for 20 minutes before she must change positions. She can lift a gallon of milk. Despite these allegations, the claimant reported she is able to help care for her dog, go out to the grocery store, drive a car, wash dishes, and prepare food.

An ALJ may consider a claimant's daily activities when assessing her alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i). But "we have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (citation omitted). Simons argues that the ALJ inappropriately weighed her household activities and "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week." *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004).

The ALJ did not reach his decision by exaggerating the extent to which these mundane tasks reveal Simons's ability to work. Rather, he discussed them in the context of objective findings contravening, in part, the level of pain and disability to which Simons testified. We do not require an ALJ to credit a plaintiff's testimony regarding his or her subjective perception of pain. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (concluding it was appropriate for ALJ to consider objective evidence regarding claimant's pain alongside other factors, including claimant's activity levels). It was not error to list these household tasks, along with other medical opinions, to evaluate Simons's subjective allegations regarding the debilitating effect of her pain.

For the foregoing reasons, we AFFIRM the judgment of the district court.