# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-1164

ROBERT S. FILUS,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:11-CV-00106—**Roger B. Cosbey**, *Magistrate Judge.*

SUBMITTED AUGUST 28, 2012\*—DECIDED SEPTEMBER 7, 2012

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Robert Filus, a 50-year-old former truck driver, has twice applied for disability benefits under the Social Security Act, claiming that back problems

---

\* After examining the briefs and the record, we have concludedthat oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

have left him incapable of gainful employment. An administrative law judge concluded that Filus could perform some light work and denied his most recent application. Because substantial evidence supports the ALJ's decision, we affirm the denial of benefits.

Filus first applied for disability insurance benefits and supplemental social security income in December of 1997, claiming that he had been disabled by back pain since August 1996 because of a car accident. See 42 U.S.C. §§ 423(d), 1382c(a)(3). After a hearing, the Commissioner found that Filus could perform a restricted range of light work and denied his application in October 1999. Filus did not appeal.

Four years later, in 2003, Filus applied for benefits again, asserting that new evidence showed that since 1996 his back pain disabled him. In 1999 he had visited a neurologist, Dr. Steven Schroeder, who observed that Filus had limited range of motion in his lower back and decreased sensation in his left leg. Then in 2004 Filus met with Dr. Rudy Kachmann to treat him for his lower back pain. An MRI suggested degenerative disc disease and mild disc bulges. Dr. Kachmann described Filus as "disabled" with "failed back syndrome" (a term that refers to persistent back pain after surgery, though Filus had not had surgery) and recommended that Filus attempt "job retraining for light work." Four months later two state-agency physicians concluded differently. They thought that Filus could perform medium work; frequently climb, balance, or stoop; and occasionally kneel, crouch, crawl, or climb ladders, ropes, and stairs.

At a hearing on his application in 2007, Filus testified that he could complete housework, prepare simple meals, feed the birds in his yard, and climb stairs for 10 or 15 minutes at a time. He also testified that he walked his dogs for five minutes three times a day, went shopping, drove occasionally, and visited his parents twice a month. Filus rated his pain at three out of ten on the day of the hearing and acknowledged that he could work if he "took a lot of pain pills and the steroids" but stated that he did not use pain medication.

After the hearing, the ALJ engaged another medical examiner, who concluded that Filus had no limitations in standing, walking, reaching, handling, feeling, or fingering. The examiner, Dr. Venkata Kancherla, observed that Filus could walk with a normal gait, recline flat, sit up, squat, and get on and off the exam table unassisted. He found that Filus had limited range of motion in his lower back and painful range of motion in his hips but normal sensation, reflexes, and muscle strength. Dr. Kancherla also found that Filus could lift and carry 20 pounds frequently; occasionally climb, kneel, crouch, crawl, or stoop; push and pull with his legs with some limitation; and stand, walk, and reach.

The ALJ ruled that Filus was not disabled and denied his application for benefits, but the Appeals Council remanded the case for the ALJ to consider updated treatment records and the limiting effects of Filus's symptoms. The additional evidence consisted of another opinion from Dr. Kachmann, to whom Filus had returned for a second visit. Dr. Kachmann wrote that Filus could sit

or stand (or combine the two) for a maximum of 30 minutes. Filus could not frequently alternate positions; could only occasionally kneel, crawl, crouch, or bend; and could never climb ladders, ropes, or scaffolds. Dr. Kachmann diagnosed him once again with failed back syndrome, describing it as secondary to advanced lumbar degenerative disc disease.

Two non-treating physicians also examined Filus. The first, Dr. Kooros Sajadi, opined that Filus could sit, stand, and walk continuously for up to 2 hour stretches, with those stretches limited to 6 hours daily. He noted tenderness in Filus's lumbosacral area, and an x-ray revealed degenerative disc space narrowing and arthritic changes. He said that Filus could lift and carry 20 pounds continuously and 50 pounds occasionally; reach, push, pull, perform postural activities, and operate foot controls without limitation; and climb stairs, ramps, ladders, and scaffolds continuously. He diagnosed Filus with low back pain resulting from degenerative arthritis of the lumbar spine and degenerative disc disease. The second physician, Dr. James Owen, noted that Filus's strength, sensation, and coordination were normal, but that Filus cried during a range-of-motion test, got on and off the exam table with obvious discomfort, and experienced pain with squatting, walking on his heels and toes, and tandem walking. Dr. Owen diagnosed Filus with persistent back pain associated with L5 radiculopathy and concluded that he would have severe difficulty traveling, lifting, handling, and carrying. He recommended possible surgery.

Filus again appeared before an ALJ in 2009. He estimated that he could walk, stand, or sit for up to 30 minutes before he needed to change position to relieve pain. He also testified that epidural injections had relieved his lower back pain temporarily but that physical therapy was unavailing. According to Filus, stress and movement aggravated his pain, with sitting and rising from a seated position being particularly difficult. Filus also testified that he could get in and out of a truck (but not a car), lift (but not carry) a gallon of milk, do housework including sweeping and laundry, and that he regularly drove to the store for groceries and cigarettes.

A vocational expert testified that about 7,500 light, unskilled jobs were available to a person who had the residual functional capacity that the ALJ found for Filus: the ability to perform light work with an option to sit or stand at 30-minute intervals; frequently balance or stoop; occasionally kneel, crouch, crawl or bend; and avoid climbing ladders, ropes, and scaffolds. These jobs included positions as a booth cashier and bench assembler. The vocational expert acknowledged that no jobs were available to Filus if his pain were as severe as he claimed.

The ALJ found that Filus was not disabled and denied benefits. Applying the familiar five-step evaluation process, see 20 C.F.R. § 404.1520(a), the ALJ concluded that (1) Filus had not engaged in substantial gainful activity since his alleged onset date; (2) his degenerative disc disease was a severe impairment; (3) this impair-

ment did not meet or medically equal the definition of any impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1; (4) Filus was incapable of performing his past work; and (5) he nevertheless had the residual functional capacity noted above.

The ALJ explained which opinions he had accepted and which he had discounted in reaching these conclusions and why. The ALJ rejected Dr. Kachmann's conclusion that Filus is "disabled," even though he is a treating physician, because that opinion is reserved to the Commissioner and in any case is inconsistent with "other substantial evidence in the record." The ALJ did not specify that evidence, but Filus himself agreed that by alternating between sitting and standing in 30-minute intervals, he could relieve his pain. The ALJ discounted Dr. Kachmann's conclusion that Filus was disabled because he had only limited contact with Filus: They met just twice over three years, and the ALJ described the second exam as "cursory" and lacking clinical testing. Finally, the ALJ explained, Dr. Kachmann diagnosed Filus with failed back syndrome even though Filus had never had back surgery. The ALJ also gave little weight to Dr. Owen's opinion that Filus has severe difficulties with common tasks because it was inconsistent with other record evidence. Finally, the ALJ discounted Dr. Sajadi's opinion that he could complete only six hours of an eight-hour workday (with two-hour long stretches of standing or sitting) because it was not supported by Dr. Sajadi's "otherwise normal examination."

The ALJ accepted that Filus's impairment could cause the symptoms he described, but he discredited Filus's

testimony about the limiting effects of his pain "to the extent" they were inconsistent with the ALJ's determination of his residual functional capacity (sitting or standing in alternating 30-minute intervals for light work). Filus's testimony regarding the severity of his symptoms, the ALJ concluded, was undermined by his testimony that he performed household chores and took no pain medications. The ALJ further noted that the ALJ who decided Filus's 1997 claim, which had preclusive effect for the 1996 to 1999 period, observed that he had a history of malingering. After the Appeals Council denied review, Filus unsuccessfully challenged in the district court the ALJ's decision.

Filus identifies a raft of alleged errors in his appellate brief. He first argues that the ALJ erred in declining to find that his impairments met the criteria of Listing 1.04A. This listing applies to spinal disorders resulting in compromise of a nerve root or the spinal cord with "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss," and, when the lower back is involved, "a positive straight-leg raising test." 20 C.F.R., pt. 404, subpt. P, App. 1, 1.04A. Although he did not have nerve root compression, Filus urges that his medical records compel a finding that he has the equivalent of root compression. But he disregards the opinions from the two state-agency physicians who concluded that he did not meet or medically equal any listed impairment. Because no other physician contradicted these two opinions, the ALJ did not err in accepting

No. 12-1164

them. See *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004); *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988).

Filus next asserts that he satisfied the requirements of listing 1.04C, which applies to ineffective ambulation resulting from "lumbar spinal stenosis" with chronic nonradicular pain and weakness. See 20 C.F.R., pt. 404, subpt. P, App. 1, 1.04C. This listing does not apply to Filus, however, because the record contains no evidence that his mild stenosis affects his ability to walk. In addition to walking around his home unassisted, he takes care of his dogs and makes regular shopping trips. Filus counters that his ability to walk around unassisted does not necessarily mean that he can "ambulate" effectively. The regulations describe the condition as the inability to "sustain[] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," such as walking a block over rough or uneven surfaces, using public transportation, shopping, banking, and climbing a few steps with the use of a hand rail. See 20 C.F.R. pt. 404, subpt. P, App. 1, 1.00B2b(2). Filus's own testimony established that he regularly did several of these activities, and Filus identifies no evidence suggesting that he could not do others. Because Filus had the burden of establishing that he met all of the requirements of a listed impairment, see *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), the ALJ did not err in finding that he could ambulate effectively.

Filus next asserts that the ALJ's finding of his residual functional capacity was not supported by substantial

evidence. We note in this connection that the ALJ made the unhelpful statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." We criticized this boilerplate in *Bjornson v. Astrue,* 671 F.3d 640, 644-46 (7th Cir. 2012), and our opinion has not changed since *Bjornson* was issued. Obvious problems include the fact that the ALJ's finding of residual functional capacity is not "above" in the opinion but is yet to come, and the fact that this statement puts the cart before the horse, in the sense that the determination of capacity must be based on the evidence, including the claimant's testimony, rather than forcing the testimony into a foregone conclusion. In *Bjornson,* this flaw required us to reverse and remand, but that is not always necessary. If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless. Here, the ALJ did offer reasons grounded in the evidence, and so we can proceed to examine them.

Filus argues that the ALJ improperly ignored Dr. Kachmann's conclusion that he could sit and stand for only 30 minutes total. But the record does not support this contention. The ALJ addressed Dr. Kachmann's opinion and explained why he was discounting it: the infrequency of treatment, the cursory nature of the second examination, and the lack of clinical tests. These are all reasons with support in the record, and the ALJ was entitled to rely on them. See 20 C.F.R. § 404.1527(c)(2)-(3); SSR 96-2p, 1996 WL 374188 (July 12, 1996); *Elder v. Astrue*, 529 F.3d 408, 415 (7th

Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). The ALJ also faulted Dr. Kachmann's diagnosis of "failed back syndrome" because Filus never had surgery (a normal prerequisite for this conclusion). See 20 C.F.R. 404.1527(c)(2)(ii). Finally, Kachmann's conclusion that Filus could not sit and stand for longer than 30 minutes appears to be based on Filus's report that sitting beyond 15 minutes was painful. ALJs may discount medical opinions based solely on the patient's subjective complaints, see *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008), and in any case Filus himself contradicted this supposed limitation by testifying that he can alternate between sitting and standing after 30-minute intervals to relieve the pain.

Filus further contends that the ALJ erred in rejecting portions of the reports of two non-treating physicians, Dr. Sajadi and Dr. Owen. The ALJ, however, was not required to afford any particular weight to these opinions, see *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). He reasonably gave less weight to Dr. Sajadi's conclusion that Filus was limited to a six-hour day of alternating two-hour periods of standing or sitting because it was inconsistent with the other record evidence. Dr. Owen's opinion that Filus has "severe" difficulty lifting, traveling, and carrying was likewise not supported by the other record evidence. See 20 C.F.R. § 404.1527(c)(3)-(4) (physicians' opinions will be evaluated for supportability and consistency); *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009). The ALJ's rejection of these two opinions was somewhat cursory because he did not specify the "other" record evidence that undermined the doctors' opinions.

But we require only that the ALJ "minimally articulate" his reasoning. See *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). Here, the ALJ noted that the results of Dr. Sajadi's examination were "overall normal" and that Dr. Sajadi had concluded that Filus could "continuously" push, pull, crouch, and crawl. The ALJ also explained that all of Dr. Owen's test results were within normal limits and that Dr. Sajadi had found that Filus could often climb stairs and carry 20 pounds. This is enough.

Finally, Filus argues that the ALJ unreasonably discounted his testimony about the effects of his pain. An ALJ may not reject a claimant's testimony about limitations on his daily activities solely because his testimony is unsupported by the medical evidence. See *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). Here, however, the ALJ considered Filus's testimony about the limiting effects of his pain along with his testimony that he regularly completed his daily household activities without any pain medication—not even over-the-counter products. In assessing a claimaint's allegations of disabling pain, an ALJ must consider the claimant's daily activities and use of pain medications, see 20 C.F.R. § 404.1529(c)(3); SSR 96-7p; *Clifford*, 227 F.3d at 871-72; *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). In light of the ALJ's explanation, we cannot say that his credibility determination was patently wrong. See *Elder*, 529 F.3d at 414.

AFFIRMED.