NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 14, 2013[*]
Decided November 26, 2013

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-2306

| | |
|---|---|
| MICHAEL ANTHONY SCHMIDT, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | |
| | No. 12-C-926 |
| CAROLYN W. COLVIN, <br> Acting Commissioner of Secial Security, <br> *Defendant-Appellee.* | Rudolph T. Randa, <br> *Judge.* |

**O R D E R**

Michael Schmidt applied for disability insurance benefits and supplemental security income, claiming to be disabled by intense back pain related to injuries he sustained in a 2005 motorcycle accident. An admininstrative law judge disbelieved

_____

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Schmidt's allegations about the severity of his back pain and refused to credit the medical opinion of his treating physician. Instead, the ALJ found that Schmidt was capable of performing light work as defined by 20 C.F.R. § 404.1567(b), and thus was not disabled. After the Appeals Council declined to review Schmidt's case, and the district court upheld the decision of the ALJ, Schmidt turned to this court. Because the ALJ did not support his findings with substantial evidence, we vacate the district court's judgment and remand to the agency for further proceedings.

After his motorcycle accident in June 2005, Schmidt sought treatment with Dr. Vance Masci for a fractured left elbow, a shoulder sprain, neck and back pain, and multiple abrasions. An October 2005 MRI revealed bulging discs in his back, mild foraminal stenosis (a narrowing of the opening through which nerve roots exit the spine), and degeneration in some facet joints (the joints which connect spinal vertebrae). With time, most of this pain disappeared, but Schmidt continued to experience neck and back pain, and he consistently reported that his pain radiated down his legs. Dr. Masci treated Schmidt's back pain with epidural injections, and Schmidt reported that these temporarily alleviated his pain. In addition to epidural injections, Schmidt also treated his back pain with a combination of painkillers. Schmidt attempted to return to work soon after the motorcycle accident but has only been able to work infrequently (and never full-time) because, he says, increased activity aggravates his back pain.

After two heart procedures in 2009, Schmidt again sought treatment for his back pain, this time with Dr. Stephen Murphy, his primary-care physician. Dr. Murphy referred Schmidt to Dr. Navtej Purewal for pain management and treatment. Again, Schmidt complained of lower back pain which radiated down his legs. Dr. Purewal's assessment of Schmidt's back problems largely mirrored Dr. Masci's assessment in 2005. Dr. Purewal treated Schmidt with epidural injections, and a new, stronger combination of painkillers. Schmidt reported that the injections relieved some of his pain, but only for a limited period of time.

In October 2009 two agency physicians reviewed Schmidt's medical records on behalf of Wisconsin's Disability Determination Bureau. The first, Dr. Pat Chan, concluded that Schmidt had the residual functional capacity, *see* 20 C.F.R. § 404.1560(b), to lift up to twenty pounds occasionally, stand or walk for up to six hours in a workday, sit for six hours in a workday, and had few movement limitations other than that he could stoop and crouch only occasionally. Dr. Chan's opinion was endorsed by a second agency physician, Dr. Syd Foster, in April 2010.

That same month Dr. Murphy referred Schmidt to Dr. Jerome Lerner. Dr. Lerner found that Schmidt's lumbar spine was tender, and that his range of motion was moderately reduced. He also noted that Schmidt had reduced sensation in his thighs and feet. Dr. Lerner opined that Schmidt was capable only of sedentary work.

In November 2010 Dr. Purewal referred Schmidt to physical therapy. Again, Schmidt reported lower back pain that radiated down his right leg. The progress reports from the physical therapist reveal that Schmidt's "plan of care" authorized eight therapy sessions, and Schmidt attended eight sessions. In January 2011, after the eighth visit, Schmidt reported to the therapist's office that he would communicate with Dr. Purewal, presumably about future visits, and follow up with the therapist's office. Schmidt never followed up, though he testified at his hearing that his insurance did not cover more than eight visits, apparently because of the therapy's ineffectiveness.

Other than physical therapy and medication, Schmidt's back pain was treated in 2010 by continued epidural injections, radiofrequency neurolysis, nerve blocks, and one treatment referred to as a "facet joint injection."

In February 2011 Dr. Murphy performed his own residual functional capacity assessment of Schmidt. Murphy concluded that Schmidt could lift up to ten pounds, that his various back ailments made prolonged sitting, standing, and walking difficult, and that he was totally unable to bend at the waist.

After the state agency denied his claims, Schmidt testified at a hearing before an ALJ about his pain, his daily activities, his work history, and his past drug use. He stated that in addition to his back pain his feet often become numb, and he has on occasion sprained his right foot when he could not feel it. He admitted that the amount of pain he suffers from varies from day to day, but emphasized that there are days on which the pain is so bad that he does not leave his bed. Schmidt also testified that he does chores around the house, including cooking, washing dishes, laundry, and salting the sidewalks. He insisted that he does not mow the lawn or do any shoveling. Beyond these chores Schmidt has not worked since 2006 with the exception of helping his brother install wiring when he can. His participation in his brother's job, however, is limited to passing tools and pulling on wires. Finally, Schmidt divulged that he has, in the past, abused drugs and alcohol, including using cocaine as recently as "two-and-a-half to three years" ago.

Following the hearing, the ALJ denied Schmidt's application for disability insurance. At the fourth step of the five-step sequential process an ALJ must use to evaluate a claim of disability, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ was required to make his own assessment of Schmidt's residual functional capacity. In doing so, the ALJ made an adverse credibility determination with respect to Schmidt, and credited the opinion of the reviewing agency physician over that of Dr. Murphy, Schmidt's treating physician.

On appeal, Schmidt first argues that the ALJ's credibility determination was unsupported and erroneous. Schmidt asserts that the various reasons the ALJ provided for disbelieving Schmidt are either wrong or not inconsistent with Schmidt's allegations of severe pain. We accord an ALJ's credibility determinations deference, *see Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010), but we decline to defer to credibility determinations when, as here, the ALJ relies heavily on the kind of meaningless boilerplate that we have consistently criticized, *see Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010), and commits several analytical errors when assessing the record.

After stating his boilerplate finding that Schmidt was not credible, the ALJ remarked that the "minimal treatment" Schmidt sought for his back pain belies any assertion that it is severe, and that Schmidt failed to comply with what treatment was recommended. *See* SSR 96-7p, 1996 WL 374186, at *7. For these propositions, the ALJ points to the discontinuation notice for Schmidt's physical therapy, but the conclusion the ALJ draws from this document is contested by Schmidt's own recollection of events. The ALJ is required to consider any explanation a claimant provides for his failure to pursue a given medical treatment, *see id.*; *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009), but the ALJ said nothing about why he finds Schmidt's reasons for ceasing physical therapy after eight visits to be implausible. And the ALJ says nothing at all to support the assertion that Schmidt sought minimal treatment for his back pain. Given that the record showed Schmidt receiving at least four different kinds of treatment, and taking a variety of different painkillers including Percocet (a narcotic used to treat moderate to severe pain) to ease his back pain, something more than a bald assertion that Schmidt sought "minimal treatment" was required. *Cf. Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000).

The ALJ's second attack on Schmidt's credibility centered on Schmidt's admitted drug use. The ALJ first implies, without any support, that Schmidt's drug use is the

reason he has been unable to find work. The ALJ then suggests that Schmidt has been downplaying his drug use. We find it difficult to see how this is so. The ALJ apparently took a cue from a stray remark in Dr. Foster's review of the medical records, where Dr. Foster concluded, based on the apparent belief that Schmidt used crack cocaine in February of 2010, that Schmidt was downplaying his drug use. But Schmidt consistently maintained that he last used *cocaine* in March of 2009, and admitted at the hearing to spending time in jail for a cocaine-related crime. (Schmidt pleaded guilty in 2008 to the manufacture, distribution, or delivery of between one and five grams of cocaine.) Finally, the ALJ asserted that Schmidt's "credibility is undermined by the fact that he indicated he stopped abusing drugs following his 2008 arrest for selling drugs." But Schmidt made no such assertion. Schmidt did represent that he both left jail and stopped using cocaine about two-and-a-half years before the hearing, but he was clearly approximating, and any differences between the actual dates and his approximations are immaterial.

Finally, the ALJ noted that Schmidt's own activities reflect the fact that he is capable of working so long as the work is not strenuous. *See* SSR 96-7p, at *3. In drawing this conclusion, the ALJ pointed to three sets of notes from Dr. Masci, one from December 2006, one from March 2007, and one from May 2007. The ALJ opined that the activities described in these notes—driving two-and-a-half hours, lifting 25 to 30 pounds, working 6 to 10 hours per day four days per week, and then working every day—undermine Schmidt's claimed limitations. But 2007 is not 2011, and the ALJ's inability to point to anything in that four-year period is telling. Schmidt asserted more than once that his back pain developed gradually, and that assertion is entirely consistent with the fact that he had osteoarthritis of the spine, a condition that worsens over time. Two examples from well before the hearing do not adequately address Schmidt's claims. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Webb v. Barnhart*, 433 F.3d 683, 687–88 (9th Cir. 2005). Furthermore, the medical records reflect that the increased activity in 2007 was accompanied by an increase in Schmidt's use of pain medications: in December 2006 Schmidt was taking 5 mg of Percocet six to eight times a day; by June 2007 he was taking it eight to ten times a day.

Schmidt next argues that the ALJ improperly chose to credit the opinion of the agency physician over that of Dr. Murphy. A treating physician's medical opinion is entitled to controlling weight unless it is inconsistent with the medical evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2). If the ALJ chooses not to give the treating physician's opinion controlling weight, the ALJ must provide good reasons for not doing so. *See id.*; *Roddy*, 705 F.3d at 636; *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir.

2011). Instead, the ALJ spent comparatively little time analyzing either Dr. Murphy's opinion, or the opinion of the agency physician.

To reject Dr. Murphy's opinion, the ALJ relied on a single syllogism juxtaposing Dr. Murphy's opinion that Schmidt could not bend or twist at the waist with the ALJ's belief that Schmidt had not alleged any back pain in a February 2011 visit to Dr. Murphy. This is not only wrong—listed on Murphy's notes from the February 2011 visit under "Active Problems" is "Lower Back Pain"—it suggests that Schmidt's back pain had to be, at all times, worse than every other pain or symptom he might have experienced in order to be disabling. *Cf. Carradine v. Barnhart*, 360 F.3d 751, 755–56 (7th Cir. 2004). The ALJ's secondary reference to Murphy's notes from a May 2010 visit (which the ALJ misreads in a similar manner) confirms the mistaken logical leap.

Balanced against the allegations of Schmidt and the medical opinion of Murphy was Dr. Chan's opinion. The ALJ gave great weight to the medical opinion, but provided almost no reason for doing so, asserting only that the opinion was "well reasoned and consistent with the body of evidence as a whole." This boilerplate is entirely unhelpful and is made even more so by the fact that the ALJ included a limitation in Schmidt's functional capacity assessment that contradicted Dr. Chan's opinion. The ALJ's reasoning provides no indication of which portions of the record might actually be consistent with Dr. Chan's opinion.

The final decisions of the Social Security Commissioner must be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g). The decision must construct a logical bridge between the facts in the record and its ultimate conclusions. *See McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). In Schmidt's case, however, we find no such bridge. We cannot say on this record that the ALJ's decision was supported by substantial evidence. We therefore VACATE the judgment of the district court and REMAND to the agency for further proceedings.