NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 27, 2015
Decided February 6, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 14-2528

| | |
|---|---|
| RYAN LAZIER,<br>    *Plaintiff-Appellant*,<br><br>*v.*<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>    *Defendant-Appellee*. | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division.<br><br>No. 11 C 3155<br><br>Joan Humphrey Lefkow,<br>*Judge*. |

**O R D E R**

Ryan Lazier applied for disability-insurance benefits and supplemental-security income based on his bipolar disorder, which had been complicated by his history of substance abuse. An administrative law judge found that Lazier's impairments met the Social Security Administration's disability listings for both affective and substance-addiction disorders. After assessing whether Lazier was disabled when not using drugs, *see* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935, the ALJ determined that he was not and denied the claim. The district court upheld the agency's decision. On appeal Lazier challenges the ALJ's findings concerning his credibility and the weight accorded his treating psychiatrist's opinion. Because substantial evidence supports the ALJ's decision, we affirm.

Lazier applied for benefits at the age of 44, claiming that his bipolar disorder rendered him unable to work. He had worked for the last 13 years building crates and packing shipments but lost that job in 2004 because of a reduction in force. (He told his doctors, however, that he was fired for absenteeism related to substance abuse.) Soon after he lost his job, Lazier experienced paranoid delusions and suicidal thoughts and was hospitalized. He felt depressed, he told the doctors, and said he had binged on cocaine for 12 straight hours before his family brought him to the emergency room. He was diagnosed with cocaine abuse and bipolar disorder, an affective disorder characterized by alternating manic, hypomanic, or mixed episodes with major depressive episodes. *See* STEDMAN'S MEDICAL DICTIONARY 568 (28th ed. 2006). He was treated with antipsychotic medication and began seeing a psychiatrist, Dr. Paragini Chandarana. He also entered a drug-treatment program, but his participation in the program was short-lived. He was expelled after only three months when he tested positive for cocaine. During this time he was also jailed for a domestic-violence incident.

Lazier continued to see Dr. Chandarana on a monthly basis over the next four years. Her treatment notes reflect that Lazier's condition eventually stabilized: he stayed sober and clean, took his medication, looked for a part-time job, retained "clear" thought processes and average intelligence despite a low attention span, and attended Alcoholics Anonymous and Narcotics Anonymous meetings about three times a week. The doctor noted that the medication stabilized Lazier's bipolar symptoms and that Lazier could "remember and focus well." Dr. Chandarana continued to prescribe antipsychotic and antidepressant medication, which prevented paranoid and suicidal thoughts and produced no side effects.

Dr. Chandarana also recorded observations of Lazier's daily life. She noted that he performed "40-45 hrs/week volunteer service," though she did not elaborate on what he did or the number of weeks he volunteered. (At oral argument Lazier's attorney stated that Lazier performed custodial work but took as many breaks as he needed.) Lazier lived with his parents, helped them with household chores, and cared for his ill mother. In his spare time, he repaired cars and read. To supplement his income, he rented out a house that he owned. Lazier reported having no social life outside of the meetings for Alcoholics Anonymous and Narcotics Anonymous.

In connection with his application for benefits, Lazier underwent various mental evaluations in 2007 and 2008. Dr. Chandarana filled out a form evaluating Lazier's ability to work in light of his mental impairments. She characterized him as having a fair ability to remember simple instructions, interact with others, and ask for help, but a poor ability to maintain concentration, make simple decisions, accept instructions and criticism, and complete a normal workweek. Dr. John Brauer, a consulting psychologist

who examined Lazier, confirmed symptoms consistent with bipolar disorder and a "somewhat impaired" ability to concentrate, but opined that he was stable and his general knowledge and judgment remained "grossly intact." A state-agency consultant filled out a form entitled "psychiatric review technique," assessed Lazier's basic cognitive functioning as "adequate with notable limitations in attention and concentration," and concluded that he "could concentrate and persist adequately on tasks within an organized setting." The same form was also completed by another state-agency psychologist who reported based on a review of the file that Lazier had "intact cognition/memory and thought processes for carrying out a wide variety of multiple step tasks."

At his hearing before an ALJ in mid-2009, Lazier testified about the severity of his limitations when he was sober and taking medication. The medication "help[ed him] function daily," Lazier said, but he experienced racing thoughts and "up and down mood swings" throughout the day during which he could not concentrate. The depression made him tired, he added, so he took a three-hour nap every day. He estimated that he could work 20 hours each week. As for his substance-abuse history, he stated that he relapsed in July 2008 when he stopped taking his antipsychotic medication, but he reentered the drug-treatment program and since has stayed sober.

A vocational expert testified that a hypothetical claimant of Lazier's age with bipolar disorder whose ability to concentrate for extended periods was moderately limited would not be able to perform his past work as a packer—which required significant concentration—but could work in a less mentally demanding job like a laundry worker, store laborer, or dish washer. But the VE clarified that a claimant would not be employable in those jobs if he had the limitations noted in Dr. Chandarana's assessment—a poor ability to maintain concentration, make simple decisions, accept instructions and criticism, and complete a normal workweek.

The ALJ submitted interrogatories to two state-agency consultants who disagreed with Dr. Chandarana's assessment and concurred with the other consultants that Lazier was stable and could perform simple tasks. First, psychologist Ellen Rozenfeld concluded based on her review of the file that Lazier's bipolar disorder was "stable on medication" and "nonsevere." She noted "no limitations" in his daily activities with "mild limitations" in social functioning and maintaining concentration. Dr. Rozenfeld gave "little weight" to Dr. Chandarana's assessment of Lazier's limitations because "the suggested limitations are not supported by the underlying progress notes and the underlying progress notes are consistent with the narrative of [Dr. Brauer] suggesting that [Lazier] was stable." The second consultant, David Biscardi, also reviewed Lazier's file and reported that absent substance abuse, Lazier "retain[ed] the capacity to

understand, remember, carry out and sustain performance of simple routine tasks, complete a normal workday, interact with co-workers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities."

The ALJ applied the five-step evaluation process and denied Lazier's application for benefits. *See* 20 C.F.R. § 404.1520. The ALJ found that Lazier had not engaged in gainful employment since the alleged onset date (step 1); that his bipolar and substance-abuse disorders were severe impairments (step 2); and that his impairments met Listings 12.04 (affective disorders) and 12.09 (substance-addiction disorders), *see id.* § 404, Subpart P, App. 1 (step 3). Because of Lazier's substance addiction, the ALJ next assessed whether Lazier was disabled when he did not use drugs, *see id.* § 416.935, and determined that he was not. The ALJ found that Lazier could not perform his past relevant work as a packer, but had the residual functional capacity to perform unskilled labor (step 4), and that suitable jobs were available, including work as a laundry worker, store laborer, and dish washer (step 5).

In assessing Lazier's RFC, the ALJ determined that Lazier was not fully credible because he had coped with bipolar disorder during his previous employment (using substances to self-medicate) but applied for disability benefits only after his diagnosis. The ALJ discredited Lazier's testimony that he could work only 20 hours in a week because he had done 40 hours of community service in a week while on probation. Finally, the ALJ gave "little probative value" to Dr. Chandarana's restrictive assessment of Lazier's ability to work because it was inconsistent with the progress reported in her treatment notes. The ALJ denied the claim, and the Appeals Council denied review.

Lazier sought review in federal court, and the district court upheld the agency's decision. The court concluded that the ALJ properly discredited Lazier based on his inconsistent testimony and gave specific reasons supported by the record to question Dr. Chandarana's assessment.

On appeal Lazier challenges the ALJ's adverse credibility determination and asserts that the ALJ used meaningless boilerplate when he wrote that Lazier's "statements concerning the intensity, persistence, and limiting effects of such symptoms are not credible to the extent they are inconsistent with the [RFC] assessment."

The use of boilerplate does not necessarily undercut the ALJ's decision if the ALJ otherwise provides specific and legitimate reasons for discrediting the claimant's testimony. *See Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). Here the ALJ legitimately discredited Lazier's testimony about his limitations—his difficulty concentrating and his inability to work full-time—because it was inconsistent with the opinions of the five consulting doctors

who agreed that he could perform unskilled tasks. Moreover, Lazier gave inconsistent reasons for why he lost his packing job. He told the ALJ that the company had undergone a reduction in force, but he told his doctors that he was fired for absenteeism related to substance abuse. The ALJ also reasonably questioned the timing of Lazier's application for benefits: he applied only after his diagnosis of bipolar disorder, despite having been able to work full-time for 13 years in a position that required concentration.[1]

Lazier next contends that the ALJ improperly discredited his treating psychiatrist's assessment. A treating physician's assessment is entitled to controlling weight if supported by objective medical evidence and other substantial evidence in the record, 20 C.F.R. § 404.1527(c)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013), but it also may be discounted if internally inconsistent or inconsistent with a consultant's opinion, *see Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007). The ALJ noted that Dr. Chandarana's restrictive assessment was at odds with the opinions of five consulting doctors (including Dr. Brauer, who personally examined Lazier), all of whom agreed that Lazier retained the mental capacity to perform at least unskilled work. Lazier also protests that the ALJ referred to the state-agency consultants as "examiners" even though only one—Dr. Brauer—actually examined him. The ALJ's use of the word "examiner" to describe the state-agency consultants does not suggest that he misunderstood their role. Their opinions deserved significant weight, the ALJ explained, because they were consistent with the record, not because they were based on personal examinations.

AFFIRMED.

---

[1] Lazier also suggests that the ALJ harbored the misimpression that he continued to experience substance abuse throughout the time in question. Lazier takes issue with several statements in the decision in which the ALJ prefaced his findings with the qualification "if the claimant stopped the substance abuse." Lazier misapprehends the framework of the ALJ's analysis. A claimant may not receive benefits if substance abuse materially contributes to a disabling condition. *See* 42 U.S.C. § 423(d)(2)(C). The ALJ was explaining that he credited the evidence in the record that Lazier had remained clean and sober (except for a short relapse in July 2008).