Elissa FODY, Plaintiff–Appellant,

v.

Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant–Appellee.

No. 15–2141.

United States Court of Appeals, Seventh Circuit.

Argued March 2, 2016.

Decided March 21, 2016.

Cody Marvin, Barry Schultz, Law Offices of Barry A. Schultz, P.C., Evanston, IL, for Plaintiff–Appellant.

Catherine A. Seagle, Social Security Administration Office of the General Counsel, Region V, Chicago, IL, for Defendant–Appellee.

## ORDER

Elissa Fody was denied supplemental security income and disability insurance benefits after claiming that her history of knee-replacement surgeries, peripheral artery disease, obesity, and other ailments left her incapable of working. An administrative law judge found that, despite these conditions, she had the residual functional capacity to perform her past work as a receptionist or a mortgage loan clerk. Fody argues that the ALJ erred by improperly weighing the medical opinion evidence and not making a proper credibility finding. Because substantial evidence supports the ALJ's decision, we affirm.

Fody applied for benefits when she was 56 years old, alleging an onset date in February 2009. She said she was disabled due to a history of knee-replacement surgeries, arthritis, hip problems, diabetes with neurological complications, frequent kidney infections, high blood pressure, depression, and anxiety.

Several of Fody's ailments potentially limit her ability to walk, sit, or stand for extended periods of time without pain. She has osteoarthritis, and she has had surgeries performed on both knees. She is also morbidly obese: she is 5′6″ and in recent years has weighed as much as 267

pounds, and has had a body mass index as high as 43. Finally, she has a history of poor circulation and swelling in her legs, and some of her doctors have recommended that she elevate her legs when sitting—a restriction that she says limits her ability to do even sedentary work.

In October 2009, one of her treating physicians, Dr. Mohin Samaraweera, completed a Residual Functional Capacity (RFC) questionnaire providing a modest view of Fody's functional abilities. He opined that Fody could sit for more than two hours at a time and stand for 45 minutes at a time. He also said, however, that she should walk for at least five minutes every half hour. He did not express an opinion about whether Fody needed a job that permitted her to shift her position at will, but he indicated on the form that Fody would probably need to take unscheduled breaks every two hours. In response to a question whether Fody would need to elevate her legs during prolonged sitting, Dr. Samaraweera replied "No." Finally, in response to a question asking whether Fody was a malingerer, the doctor wrote, "to some extent."

The Social Security Administration denied Fody's application initially and again on reconsideration. An ALJ conducted a hearing on her application in December 2010 and promptly denied her request for benefits. The Appeals Council denied her request for review.

Fody then sought judicial review in federal district court and argued that the ALJ had erred by failing to consider Dr. Samaraweera's RFC questionnaire. A magistrate judge, presiding with the parties' consent, agreed and remanded the case so the ALJ could consider the overlooked report. *See Fody v. Astrue*, No. 11 C 8926, 2013 WL 422882, at *1 n. 1, *5–8 (N.D.Ill. Feb. 4, 2013).

In 2011, while Fody's case was pending in the district court, her primary care physician, Dr. Stefan Nemeth, referred her to a cardiologist, Dr. Govind Ramadurai, for symptoms of swelling in her feet and cramps while walking. Dr. Ramadurai reviewed the results of a Doppler ultrasound of Fody's legs and found no blockage (occlusions) or narrowing (stenosis) of her arteries. But he did find that the arteries in her legs had been hardened by excessive calcium. Dr. Ramadurai performed an angiogram and diagnosed mild-to-moderate peripheral artery disease affecting the arteries below the knees. He also observed a small fistula, an abnormal passageway between an artery and vein. Dr. Ramadurai prescribed medication to treat Fody's peripheral artery disease and recommended that she undergo surgery to have stents placed in both legs. But Fody said she could not afford these interventions, so Dr. Ramadurai recommended that she take aspirin and keep her legs elevated when sitting down. Dr. Nemeth further instructed Fody to sit with her legs extended until she had the surgery.

Fody was examined in August 2013 by a state-agency doctor who confirmed that Fody's mobility had decreased since she had filed for benefits in 2009. This doctor observed that Fody had mild difficulty getting on and off the examination table and appeared "unsteady on her feet when she was not using a cane." But despite her slow, rigid gait, the doctor said, she could walk more than 50 feet without her cane. The doctor also observed that she had slight swelling in her feet with no discoloration, and that she reported "altered sensation to light touch in her legs and feet"— a potential sign of diabetic neuropathy.

Based on that examination and a review of Fody's medical records, a different state-agency doctor completed another RFC questionnaire and opined that Fody

could stand and walk for two hours—and sit for six hours—in an eight-hour workday, provided that she could "periodically alternate sitting and standing to relieve pain and discomfort." These observations and opinions were consistent with reports that two additional state-agency doctors had prepared six months earlier.

Also in August 2013, Fody's own nonexamining medical expert, Dr. Julian Freeman, who specializes in neurology and internal medicine, prepared a report opining that two listings (1.03 and 4.12) were satisfied by Fody's peripheral artery disease and inability to walk effectively after knee-replacement surgeries. Dr. Freeman further opined that Fody could sit for six hours a day and walk or stand for no more than an hour a day total in increments of no more than five minutes.

Fody went to the emergency room in October 2013 after a varicose vein burst on her lower-left leg. In November, Dr. Ramadurai updated the extent of Fody's peripheral artery disease from "mild-to-moderate" to "moderate-to-severe." But this update did not include a recommendation that Fody elevate her legs, as had been mentioned in a treatment note from April 2013.

In February 2014, Fody appeared at another hearing before the ALJ and testified that her need to keep her legs elevated prevented her from working. In the past two years, she explained, she had been elevating her legs to hip height when seated to alleviate the swelling, pain, and numbness in her legs. Before then she had used a footrest while seated at her receptionist job; but, she added, she had also been on diuretics at that time, which she no longer could take because of her kidney problems. Finally, she estimated she could walk about 100 feet with her cane, which she said she always used, and could stand about ten to fifteen minutes.

Also present at the hearing was a nonexamining physician, Dr. Ashok Jilhewar, a gastroenterologist and internist, who testified for the agency and expressed his disagreement with the opinions of Drs. Ramadurai and Freeman. First, Dr. Jilhewar testified that the medical record did not support Dr. Ramadurai's recommendation that Fody elevate her feet when sitting. According to Dr. Jilhewar, minor swelling of the legs like that experienced by Fody is a purely cosmetic issue with no clinical significance when accompanied by extreme obesity and does not require leg elevation or any other medical intervention. Dr. Jilhewar also took issue with Dr. Freeman's suggestion that Fody's hardened arteries undermined the reliability of the ultrasounds taken of her legs: two of the ultrasounds showed normal blood flow and one showed mildly abnormal blood flow that, according to Dr. Jilhewar, would not be expected to significantly affect her use of that leg. Doppler ultrasound may have been unreliable in the past, Dr. Jilhewar explained, but it has been an accepted medical imagining technique for decades.

A vocational expert also testified about the jobs that would be available to someone with Fody's functional limitations. The ALJ asked the expert to consider limitations for a hypothetical individual with a high school education who was closely approaching advanced age and able to perform sedentary work that did not require kneeling, crouching, balancing, stooping, or climbing. The expert opined that such a person would be able to perform Fody's past work as a receptionist or loan clerk. On cross-examination, the expert agreed that the hypothetical person would have difficulty working if she needed to elevate her legs to waist height for thirty minutes every three hours, and would be unable to work if she was off-

task fifteen percent of the time due to her symptoms.

The ALJ again concluded that Fody was not disabled. Applying the requisite five-step analysis, see 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), the ALJ determined that (Step 1) she had not engaged in substantial gainful activity during the relevant time period; (Step 2) her degenerative joint disease in both knees, osteoarthritis of the left hip, peripheral artery disease, and obesity were severe impairments; (Step 3) none of those impairments equaled a listed impairment; (Step 4) she retained the residual functional capacity to perform sedentary work, subject to certain environmental and positional restrictions; and (Step 5) she could perform her past relevant work as a receptionist or a loan clerk.

In reaching this conclusion, the ALJ explained that she found Fody "not entirely credible" because her complaints about her functional limitations exceeded the limitations supported by the objective medical evidence. And the ALJ gave great weight to Dr. Jilhewar's opinion while discounting the opinions of Drs. Freeman and Ramadurai, for the reasons given by Dr. Jilhewar. The Appeals Council again denied Fody's request for review, and this time the district court upheld the ALJ's decision.

◼ Fody first argues that the ALJ erred by not giving controlling weight to Dr. Ramadurai's opinion that she should keep her legs elevated when seated—a requirement the vocational expert agreed would limit Fody's employment prospects. Dr. Ramadurai, her cardiologist, had been treating her for over two years by the time of the hearing, and Fody argues that his opinion should have been credited over the contrary opinion of the nonexamining medical expert, Dr. Jilhewar.

But a treating physician's opinion receives controlling weight only when it is consistent with the other substantial evidence in the record, 20 C.F.R. § 404.1527(c)(2); see Scott v. Astrue, 647 F.3d 734, 739 (7th Cir.2011), Punzio v. Astrue, 630 F.3d 704, 710 (7th Cir.2011), and the ALJ adequately explained why she credited Dr. Jilhewar's opinion over Dr. Ramadurai's. As the ALJ noted, none of the medical imaging showed more than a mildly abnormal loss of blood pressure in Fody's legs, and Dr. Ramadurai is the only doctor who recommended leg elevation after Fody's alleged onset date. Moreover, the medical reports show that Fody never exhibited more than slight swelling in her legs, and she offered no evidence to counter Dr. Jilhewar's contention that slight swelling of the legs is commonly associated with extreme obesity and does not require medical treatment or leg elevation.

◼ Fody insists, however, that Dr. Jilhewar's opinion was unreliable because he slightly mischaracterized her medical records. For example, Dr. Jilhewar said, and the ALJ repeated in her opinion, that Dr. Ramadurai was the only doctor who recommended that Fody should elevate her legs. But more than six years before Dr. Ramadurai made this recommendation, leg elevation had been recommended by two other doctors who had treated Fody when she previously lived in South Carolina. And in 2013 Dr. Nemeth ordered Fody to "sit with extended legs" until she was able to have stents placed in her legs. Moreover, Dr. Jilhewar misspoke when he stated that all of Fody's neurological examinations had shown her to have normal response to sensation; during an examination by a state-agency doctor in August 2013, Fody in fact had reported altered sensation to light touch in her hands and legs.

These misstatements are harmless. Regarding the omission of the early recommendation of the South Carolina doctors that Fody elevate her legs, these recommendations preceded by several years both her alleged onset date and Dr. Ramadurai's diagnosis of mild-to-moderate peripheral artery disease. Further, Fody's own nonexamining medical expert, Dr. Freeman, not only made no mention of any need for her to elevate her legs, but he even opined that Fody could sit for six hours a day. Also, the record does not reflect that Dr. Nemeth believed that Fody should elevate her legs when sitting; he merely recommended that she extend her legs. As for Dr. Jilhewar's failure to acknowledge that Fody reported an altered response to sensation during a recent examination, that oversight does not undermine his conclusion that numerous neurological examinations showed normal results. Nor is it clear what significance such an acknowledgement would have had on Dr. Jilhewar's opinions about Fody's functional limitations—the same doctor who noted the altered sensation also opined that she could safely sit, stand, and walk more than 50 feet without a cane, so he clearly did not think that nerve damage severely limited her mobility.

Even if the ALJ had credited Dr. Ramadurai's recommendation that Fody keep her legs elevated, it's not clear how that would have changed her conclusion that Fody was capable of working. First, the vocational expert did not say that any leg-elevation requirement would preclude Fody from working; he merely said that such a requirement would "impact" the number of available positions. And Dr. Ramadurai did not express his recommendation in terms of any functional limitations. For example, he did not say how long Fody could safely sit without elevating her legs or whether she needed to elevate her legs to hip height (as opposed to merely elevating her legs with a footstool, as she did when performing her past work).

Fody next challenges the ALJ's decision to weigh Dr. Jilhewar's opinion more heavily than that of the nonexamining medical consultant, Dr. Freeman. But the ALJ provided legitimate reasons for that decision. As the ALJ noted, every doctor who actually examined Fody observed that she was capable of walking at least 50 feet without a cane, and those observations are hard to square with Dr. Freeman's opinion that Fody's history of knee surgeries left her effectively incapable of walking.

Finally, Fody faults the ALJ for failing to conduct a proper credibility determination, noting that the ALJ's statement that she found Fody "not entirely credible" is one this court has repeatedly derided as "meaningless boilerplate," *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir.2010). But this boilerplate does not provide an independent basis for remanding the case to the agency; we will uphold the ALJ's credibility determination as long as the ALJ provided legitimate reasons for discrediting the claimant's testimony. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir.2012). Here the ALJ noted the comment of one of Fody's treating physicians, Dr. Samaraweera, that she is "to some extent" a malingerer, and, as discussed above, the ALJ explained why she agreed with Dr. Jilhewar that Fody's testimony about her functional limitations was not supported by the medical evidence.

Fody, in somewhat scattershot fashion, also challenges the ALJ's adverse credibility finding on a number of other grounds, but these alternative arguments are even less persuasive. For example, Fody faults the ALJ for stating that she was not taking all of her medications as prescribed, but the ALJ never drew any

impermissible adverse inferences from that fact; she merely mentioned it while summarizing Dr. Ramadurai's treatment notes. As another example, Fody obliquely faults the ALJ for not considering her "obesity in assessing the credibility of her symptoms," but the ALJ recognized Fody's obesity as a severe impairment and considered it during her RFC analysis.

AFFIRMED.